UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

A.E.F., an Infant, et al.,

                    Plaintiffs,

          v.                                          **DECISION AND ORDER**
                                                      13-CV-285S

UNITED STATES OF AMERICA
and SATYA SAHUKAR,

                    Defendants.

# I. INTRODUCTION

In this action, Plaintiffs allege under the Federal Tort Claims Act ("FTCA") that Defendants were negligent in their medical treatment of A.E.F. at the time of A.E.F.'s birth and in subsequent treatment.  Presently before this Court is Defendant United States' Motion to Dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction, pursuant to Rule 12 (b)(1) of the Federal Rules of Civil Procedure.  For the following reasons, Defendant's motion is denied.

# II. BACKGROUND

## A.     Facts

Plaintiffs are A.E.F., an infant, and her parents, W.E.F. and K.D.F.  (Complaint, Docket No. 1, ¶¶ 2-4.)  Defendants are the United States and Satya Sahukar.  The United States is a defendant because Oak Orchard Community Health Center, Inc. ("Oak Orchard"), where A.E.F. received medical treatment, is a federally-funded medical facility. (Compl., ¶¶ 5-7.)  Defendant Satya Sahukar is a pediatrician duly licensed to practice medicine in New York.  (Compl., ¶ 7.)

Plaintiffs allege that A.E.F. was a patient at Oak Orchard from her birth, in August

2005, until November 9, 2005.  (Compl., ¶ 9.)  A.E.F. then became Dr. Sahukar's patient between November 10, 2005, and August 13, 2007.  (Compl., ¶ 10.)

A.E.F. was born through a Frank breech vaginal delivery.[1] (Compl., ¶ 13.)  Initially, A.E.F. reached developmental milestones, for example, sitting up at six months and walking at 14 months. (K.D.F. Affidavit, Docket No. 15-1, ¶ 11.)  But when A.E.F. reached 20 months, A.E.F.'s parents noticed that A.E.F. waddled when walking and had a slightly curved lower back. (Id. at ¶ 14.)  In June of 2007, they noticed a swayback of A.E.F.'s spine.  (Id.)  These observations led A.E.F.'s parents to seek x-rays at a local hospital. (Id.)

The x-ray results were relayed to Dr. Sahukar, who referred A.E.F.'s parents to orthopaedic surgeon Dr. Michael Ferrick.  (Id. at ¶¶ 14, 15)  On June 12, 2007, Dr. Ferrick diagnosed A.E.F. with bilateral hip dysplasia and bilateral dislocated hips. (Id. at ¶ 15.) This was the first time A.E.F.'s parents became aware that A.E.F. had a hip problem.  (Id.) According to A.E.F.'s parents, Dr. Ferrick explained that A.E.F.'s hip problems likely developed in utero and existed since birth.  (Id.)  Based on A.E.F.'s age, Dr. Ferrick recommended surgical intervention, rather than bracing.  (Id.)

A.E.F. thereafter underwent two hip reduction surgeries: for the right hip in September 2007, and for the left hip in October 2007. (Id. at ¶ 16.)  A.E.F. then wore pelvic hardware and hip orthotics for various periods of time.  (Id.)  On September 21, 2010, Dr.

---

[1] Frank breech means that a baby's buttocks are aimed at the birth canal with his or her legs sticking straight up in front of his or her body.  The baby's feet are near the head.

Ferrick informed Plaintiffs that A.E.F. had developed a problem in the right hip that would likely require additional surgery.  (Id.)

In April 2011, A.E.F.'s parents discussed A.E.F.'s medical issues with A.E.F.'s grandfather.  (Id. at ¶ 18.)  Having experienced hip problems and operations himself, A.E.F.'s grandfather suggested to A.E.F.'s parents that A.E.F. was unusually young to be experiencing hip problems and could expect to suffer future problems.  (Id.)  He suggested that they contact a lawyer to see if anything could be done to help A.E.F.  (Id.)  Heeding A.E.F.'s grandfather's advice, A.E.F.'s parents eventually retained counsel on May 31, 2011, who investigated A.E.F.'s condition and determined that certain acts or omissions by A.E.F.'s medical care providers may have caused the condition.  (Id. at ¶¶ 19-21.)

According to K.D.F., Dr. Ferrick never told her or her husband that A.E.F.'s hip problems were caused or aggravated by the acts or omissions of healthcare providers. (Id. at 17.)  To the contrary, Dr. Ferrick explained that A.E.F.'s hip problems likely developed in utero and existed since birth.  (Id. at 15.)  Rather, the first time that anyone suggested to K.D.F. and her husband that A.E.F.'s problems could be the result of improper medical treatment was when A.E.F.'s grandfather raised the issue in April 2011.  (Id. at 18.)

**B.    Procedural History**

Plaintiffs filed administrative tort claims with the Department of Health and Human Services ("HHS") on September 24, 2012.  (Compl., ¶ 25.)  HHS denied Plaintiffs' claims on October 3, 2012.  (Compl., ¶ 26.)  Plaintiffs then commenced this action about five months later, on March 19, 2013, by filing a complaint in the United States District Court for the Western District of New York.  (Docket No. 1.)

The first claim in Plaintiffs' complaint is that Defendants acted negligently in their

3

care and treatment of A.E.F. by failing to properly diagnose and treat A.E.F.'s hip conditions. (Compl., ¶¶ 11-18.) Specifically, Plaintiffs maintain that Defendants negligently failed to properly diagnose and treat A.E.F.'s developmental dysplasia and bilateral hip dislocation. (Compl., ¶12.) Plaintiffs' second and third claims are that Defendants' negligence damaged A.E.F.'s father and mother, respectively, as they have and will incur expenses relating to A.E.F.'s condition, and they have and will lose A.E.F.'s services and society. (Compl., ¶¶ 20, 23.)

On August 22, 2013, Defendant United States filed the instant Motion to Dismiss, arguing that because Plaintiffs' administrative claims were untimely, this Court lacks proper subject-matter jurisdiction. (Docket No. 11.) Briefing of Defendant's motion concluded on September 30, 2013, after which this Court took the motion under advisement without oral argument.

### III. DISCUSSION

#### A.    Motion to Dismiss Standard

The plaintiff, as the party seeking to invoke the court's jurisdiction, bears the burden of demonstrating proper subject-matter jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); Scelsa v. City Univ. of N.Y., 76 F.3d 37, 40 (2d Cir. 1996). In turn, a defendant may assert lack of subject-matter jurisdiction as a defense under Rule 12(b)(1), which permits dismissal of an action if the "district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

In assessing a Rule 12(b)(1) motion, the court accepts as true all material factual

allegations in the complaint, but does not draw inferences favorable to the party asserting jurisdiction.  See J.S. *ex rel.* N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Financial Svcs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  The court may also consider affidavits and other materials beyond the pleadings, but may not rely on conclusory or hearsay statements.  See J.S., 386 F.3d at 110.

**B.    Subject-Matter Jurisdiction under the FTCA**

The FTCA provides a limited waiver of the sovereign immunity enjoyed by the United States.  The United States may be held liable when employees acting within the scope of their employment are negligent in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).

The statute of limitations provisions included in the FTCA are a condition of this limited waiver of sovereign immunity.  28 U.S.C. § 2401(b); United States v. Kubrick, 444 U.S. 111, 117-18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).  Specifically, these provisions require that any claim be "presented in writing to the appropriate Federal agency within two years after such claim accrues."  28 U.S.C. § 2401(b).  A claim accrues under the FTCA "either at the time of injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts critical to his or her injury, whichever is earlier." Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999).  If this requirement is not met, a district court lacks subject-matter jurisdiction over the claim.  Id. at 189.

**C.    Diligence-Discovery Rule of Accrual**

Accrual of an FTCA claim is a matter of federal law.  See A.Q.C. *ex rel.* Castillo v.

United States, 656 F.3d 135, 139 (2d Cir. 2011).  An FTCA claim ordinarily accrues at the time of injury.  See Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982).  But accrual may be postponed when a plaintiff "would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted."  Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998).  In such a case, the diligence-discovery rule of accrual applies.

Under the diligence-discovery rule, a claim does not accrue until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its iatrogenic cause.  Id.; Valdez ex rel. Donely v. United States, 518 F.3d 173, 178 (2d Cir. 2008)(requiring that a plaintiff know, or reasonably could know, "that the injury he suffered related in some way to the medical treatment he received.").  "Discovery of the 'critical facts' of injury and causation is not an exacting requirement, but requires only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it."  Kronisch, 150 F.3d at 121.  "A claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice."  Id. (citing Guccione v. United States, 670 F.Supp 527, 536 (S.D.N.Y. 1987)).

**D.    Analysis**

The only issue before this Court is the date on which Plaintiffs' FTCA claim accrued. Defendant maintains that the claim accrued on June 12, 2007, the date Dr. Ferrick diagnosed A.E.F. with bilateral hip dysplasia and bilateral dislocated hips.  (Id. at ¶ 15.) Defendant argues that this was the date on which Plaintiffs learned of A.E.F.'s injury and its cause.  According to Defendant, the possibility of doctor-caused injury to A.E.F. was "an

obvious question" based on Dr. Ferrick's inquiries concerning A.E.F.'s prior treatment and his elimination of bracing as a treatment option due to A.E.F.'s age.

Plaintiffs maintain that their claim accrued, at the earliest, in April 2011, when A.E.F.'s grandfather suggested that A.E.F.'s parents contact a lawyer on A.E.F.'s behalf. (K.D.F. Affid., ¶ 18.)  According to K.D.F., this was the first time anyone suggested to her and her husband that A.E.F.'s condition could have been the result of improper medical treatment.  (Id.)

Based on the evidence of record, this Court finds that Plaintiffs' FTCA claim accrued in April 2011, at the earliest.  Before April 2011, Plaintiffs were unaware that A.E.F. may have suffered an iatrogenic injury.  A.E.F. reached developmental milestones until just before A.E.F.'s second birthday, at which time A.E.F.'s parents sought medical intervention based on their observations of A.E.F.  Dr. Ferrick then examined A.E.F. and diagnosed two hip conditions, explaining that A.E.F. was likely born with the conditions and that they likely developed in utero.

Nothing in the record supports Defendant's position that A.E.F.'s parents should have known from Dr. Ferrick's inquires about past treatment and bracing that A.E.F.'s condition could have been the result of medical malpractice, especially when this discussion is considered in the context of Dr. Ferrick advising A.E.F.'s parents that A.E.F.'s condition likely developed in utero.  Dr. Ferrick's records do not reflect any discussion of medical malpractice, nor is there a reasonable basis to conclude that the possibility of medical malpractice was an "obvious question," as Defendant argues.  The best that can be said of this discussion is that it marks the first time that Plaintiffs learned of A.E.F.'s injury.

Rather, this Court finds that it was not until April 2011, when A.E.F.'s grandfather questioned A.E.F.'s condition, that A.E.F.'s parents were reasonably on notice of both A.E.F.'s injury *and* its possible doctor-related cause.  See Kronisch, 150 F.3d at 121; Valdez, 518 F.3d at 177.  Consequently, this Court finds that Plaintiffs' FTCA claim accrued, at the earliest, in April 2011.  Because Plaintiffs filed an administrative claim with HHS within two years of April 2011, see Compl., ¶ 25, and filed this action within six months of the denial of that claim, see Compl., ¶¶ 26, 27, this Court has proper subject-matter jurisdiction.  See 28 U.S.C. § 2401(b).

## IV. CONCLUSION

For the foregoing reasons, this Court finds that it has proper subject-matter jurisdiction.  Defendant's motion to dismiss for lack of subject-matter jurisdiction is therefore denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 11) is DENIED.

FURTHER, that Defendant United States is directed to file an answer within 21 days of the filing date of this decision.

SO ORDERED.

Dated:       May 30, 2014
             Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M.  SKRETNY
                                             Chief Judge
                                        United States District Court

8